UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **STANLEY THOMAS**<br>       **OCC #1578283**<br>**VS.** | **CIVIL ACTION NO. 3:12-cv-0687**<br><br>**SECTION P**<br><br>**JUDGE JAMES T. TRIMBLE, JR.** |
| **OUACHITA CORRECTIONAL**<br>**CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff, Stanley Thomas, a pretrial detainee at the Ouachita Correctional Center (OCC), Monroe, Louisiana, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 15, 2012.  Plaintiff complained that he was denied adequate medical care and treatment for various ailments and he sued the Nurses at OCC (Donna Norman, Sonya Coat, and Nurse Wilson) praying for compensatory damages for pain and suffering.  This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as duplicative, malicious, and for failing to state a claim for which relief may be granted.

*Statement of the Case*

On July 5, 2011, plaintiff – who was then a detainee at OCC – filed a *pro se* civil rights action complaining that he was being denied care and treatment for infected wisdom teeth and "boils" on his stomach and legs. He sued OCC and Nurse Donna Norman; he prayed for injunctive relief and compensatory damages. *See Stanley Thomas v. O.C.C., et al.*, No. 3:11-cv-1300 at Doc. 1. On August 12, 2011, the undersigned completed an initial review and ordered

service of process on Donna Norman.  (Service was withheld on OCC since the corrections center is not a juridical person capable of being sued.) *Id.* Doc. 9.  In due course, the complaint was served and on September 28, 2011, Norman filed an answer denying all liability. *Id.* Doc. 19. On January 4, 2012, plaintiff filed a motion for summary judgment. *Id.*, Doc. 29. On January 18, 2012, Norman filed a motion for summary judgment and included a certified copy of the plaintiff's medical and prison records on file at OCC and elsewhere along with her affidavit outlining plaintiff's complaints and the treatment afforded him at OCC and elsewhere. *Id.*, Doc. 32.  On March 12, 2012, plaintiff filed a "motion" seeking the results of a colonoscopy examination which was apparently conducted on February 14,  2012. Since the motion was unrelated to the issues raised in the pending suit, it was denied on April 19, 2012. *Id.*, Docs. 36 and 40.  On April 19, 2012, the undersigned recommended that plaintiff's motion for summary judgment be denied and that Norman's motion for summary judgment be granted. *Id.*, Doc. 41. That recommendation remains pending with United States District Judge Robert G. James.

  Meanwhile, on March 15, 2012, plaintiff submitted a hand written letter to the Clerk of Court along with a copy of what purported to be a grievance submitted to OCC's "shift supervisor" on March 8, 2012.  In the grievance plaintiff complained that he had no more "itch cream" or "itch medication" and that when he complained about this circumstance, he was unable to obtain the grievance form used by the corrections center. These documents were docketed as a deficient prisoner civil rights complaint and plaintiff was provided the form for filing prisoner civil rights complaints and an application to proceed *in forma pauperis* and directed to amend . *Thomas v. O.C.C., et al*, No. 3:12-cv-0687 at Docs. 1 and 3. On April 4, 2012, he filed his complaint on the appropriate form.  He raised claims totally unrelated to the

claims asserted in his initial filing; instead, he complained that in March 2011, when he complained of his dental problems, he was given antibiotics for the infection and ibuprofen for pain. He also admitted that he was provided an ointment for boils. He alleged that he was given ibuprofen "for a long period of time for pain and [his] stomach developed 'Pollocks' around the lining of it and [his] mouth continued to hurt from January 2011 until July 2011 when [he] finally got [the teeth] removed." He also alleged that on some unspecified date he was taken off of "Clodidine[1]," a blood pressure medicine, and another medication was substituted. Plaintiff, however, determined on his own that the new medication was ineffective and he refused to take it. He prayed for injunctive relief – "I would like my stomach repaired from taking [ibuprofen] for a long period of time and I would like to be compensated for the pain and suffering I went [through] being [made] to wait 7 months before something was done." [Doc. 4, ¶V]

*Law and Analysis*

*1. Screening – Malicious Litigation*

Title 28 U.S.C. §1915(a) enables an indigent litigant to litigate an action *in forma pauperis* in federal court without the necessity of prepaying fees and costs; however, subsection (d) prevents abuse of the privilege by authorizing the court to "dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." See 28 U.S.C. §1915; see also *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir.1986). The Fifth Circuit has

---

[1] Plaintiff probably means, clonidine, a medication used alone or in combination with other medications to treat high blood pressure. Clonidine is in a class of medications called centrally acting alpha-agonist hypotensive agents. It works by decreasing your heart rate and relaxing the blood vessels so that blood can flow more easily through the body. Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements online at http://www.nlm.nih.gov/medlineplus/druginformation.html

held that "[a] district court may dismiss an *in forma pauperis* proceeding for frivolousness or maliciousness at any time, before or after service of process," and that a district court is "vested with especially broad discretion" in determining whether such a dismissal is warranted. *Green*, 788 F.2d at 1119. If a civil action is a duplicative action arising from the same series of events and alleging many of the same facts as an earlier suit, such "[r]epetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. §1915(d) as malicious." See *Robinson v. Woodfork*, No. 86-3735 (5th Cir. May 22, 1987) (unpublished order) (citing *McCullough v. Morgan*, No. 85-2022 (5th Cir. July 3, 1985) (unpublished order) and *Hill v. Estelle*, 423 F.Supp. 690 (S.D.Tex.1976)).

In short, an *in forma pauperis* complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under the authority of Section 1915(d). *Pittman v. K. Moore*, 980 F.2d 994, 995 (5th Cir.1993)("[I]t is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff"). Or, put another way, "[w]hen declaring that a successive *in forma pauperis* suit is 'malicious' the court should insure that the plaintiff obtains one bite at the litigation apple-but not more." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir.1993).

To the extent that plaintiff continues to complain about and seek compensatory damages for the pain and suffering he endured with regard to his dental and skin problems, such claims are clearly duplicative of the claims raised in Civil Action 3:11-cv-1300 and those claims should be dismissed with prejudice as malicious.

### 2. Additional Claims for Relief

Read liberally, plaintiff also claims that the ibuprofen he was provided caused "pollocks"

around the lining of his stomach and he wants the Court to order the defendants to repair this damage. He also complains that another blood pressure medication was substituted for the medication he has been taking and he believes the new medication is ineffective. Nevertheless, he asks for no specific relief with regard to his blood pressure medication.

Plaintiff is still a pre-trial detainee and not a convicted prisoner. Because they are presumed innocent, pre-trial detainees have a constitutional right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534-37, 99 S.Ct. 1861, 1871-73, 60 L.Ed.2d 447 (1979). Accordingly, a pre-trial detainee's claims of unconstitutional conditions or circumstances are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to convicted inmates. *See id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996).

Civil rights complaints, when filed pursuant to Section 1983 by pre-trial detainees, are analyzed as either conditions of confinement or episodic acts resulting in the deprivation of constitutional rights without due process. A "conditions of confinement" case raises a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). In such cases, the constitutional harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997). When a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if it appears that the

complained of conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare*, 74 F.3d at 640 (citing *Bell*, 441 U.S. at 538-39, 99 S.Ct. at 1873-74); see also *Scott*, 114 F.3d at 53 (citing *Hare* ).

On the other hand, if the detainee's complaints are based on particular acts or omissions of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hare*, 74 F.3d at 645. Under this analysis, a detainee's due process rights are violated only if the defendants acted with deliberate indifference to a substantial risk of serious harm which resulted in injury. *Wagner v. Bay City,* 227 F.3d at 324 (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) *(en banc)*; see also *Edwards v. Johnson*, 209 F.3d 772 (5th Cir. 2000) ("To prove an underlying constitutional violation in an episodic acts case, the detainee must establish that the official acted with subjective deliberate indifference."). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.* This deliberate indifference standard is identical to the standard used to analyze medical care claims affecting convicts and arising under the Eighth Amendment.

Thus, whether the case arises under the Fourteenth Amendment or the Eight Amendment, the deliberate indifference standard must be employed. In either case, deliberate indifference means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Thus, "... the failure to alleviate a significant risk

that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

In addition, the alleged deprivation must be "sufficiently serious," which means that "the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 847 (emphasis supplied). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado*, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

Plaintiff was provided ibuprofen for pain; he has not alleged, nor could he, that the defendant nurses subjectively intended that some negative side effect – i.e. "pollocks" – befall plaintiff as a result of this treatment. With regard to his alleged stomach problems, plaintiff has

not demonstrated deliberate indifference. Indeed, unsuccessful medical treatment, acts of negligence, or even medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 346.

Further, to the extent that he now disagrees with the use of ibuprofen as a treatment for his pain, and, to the extent that he now disagrees with the choice of blood pressure medication now recommended, he likewise fails to state a claim for which relief may be granted. Disagreement with medical diagnosis or treatment does not constitute deliberate indifference. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985). Diagnosis and treatment decisions are a classic example of a matter best left to the medical judgment of health care professionals. *Gobert*, 463 F.3d at 346. The facts alleged simply do not establish deliberate indifference and therefore plaintiff's complaint fails to state a claim for which relief may be granted.

### 3. Juridical Person

It is unclear whether plaintiff has again named OCC as a defendant. To the extent that he has, such a claim is frivolous. Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether an entity such as a corrections facility has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24.

OCC is a parish corrections facility operated by the sheriff of Ouachita Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)]. OCC is not a jural entity capable of being sued and to the extent that plaintiff has named this entity as a defendant, his claims are frivolous.

*Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous, malicious, and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See**

*Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 1, 2012.

                                                                                        KAREN L. HAYES
                                                                                       U. S. MAGISTRATE JUDGE